***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. An employee-employer relationship existed at the time of the alleged incident.
2. Triangle Brick was insured for workers' compensation coverage by the Travelers Insurance Company at the time of the alleged incident.
3. The date of the alleged injury was August 17, 2000.
4. The parties are subject to the North Carolina Workers' Compensation Act, and defendant-employer employed the requisite number of employees to be bound under the provisions of said Act.
5. The parties stipulated into evidence as Stipulated Exhibit 1 three pages of plaintiff's wages from August 25, 1999 through September 11, 2001 including plaintiff's hours worked and overtime as well as his gross wages.
6. The parties stipulated into evidence as Stipulated Exhibit 2 a chart of the days plaintiff missed from work.
7. The parties stipulated into evidence as Stipulated Exhibit 3 a packet of plaintiff's medical records.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner in this matter, plaintiff was a 37-year-old male who completed the fifth grade. Plaintiff quit school and worked on a farm until he was approximately 17 years old. Plaintiff next worked in a grocery store and did yard work. Plaintiff then became employed as a construction laborer. In the early 1980s plaintiff became employed with defendant-employer as a forklift operator and worked there for approximately five years from 1983 through 1988. Thereafter, plaintiff relocated and worked for the City of Raeford doing maintenance. Plaintiff was incarcerated for a period of time and then returned to work with defendant-employer as a forklift operator in June or July 1999.
2. On August 17, 2000 plaintiff continued his employment with defendant-employer as a forklift operator. Plaintiff operated one of the larger forklifts. He used his right hand to control the levers grasping, lifting and placing various objects and steered the forklift with his left hand. Plaintiff worked ten to twelve hours a day and drove the forklift most of the day.
3. Plaintiff alleged at the Deputy Commissioner hearing that on August 17, 2000, as he was driving his forklift, one of the rear wheels caught a brick and snatched the steering wheel, causing him to feel a snap and pop in his left arm. Plaintiff indicated that he did not tell anyone right away, but approximately one week later told his supervisor Harvey Lee Judd, who sent him to Jesse Edington, inventory control manager. Plaintiff acknowledged that he did not tell Mr. Edington about the alleged running over the brick incident when Mr. Edington was filling out an incident report and sending plaintiff for medical treatment.
4. Mr. Edington sent plaintiff to Concentra Medical Center on August 23, 2000. Plaintiff at that time indicated that he drove a fork truck for Triangle Bricks and in the past three weeks had been working increasing amounts of overtime. Plaintiff indicated that he used his left arm to steer the truck and in the past week or two had developed numbness and tingling in the left fourth and fifth digits, pain over the left elbow and pain in his left upper back and neck. Dr. Joan Potter treated plaintiff conservatively with a Medrol Dosepak, physical therapy, a wrap and anti-inflammatories. Plaintiff was instructed to be careful about activities using his arm.
5. As of August 29, 2000 plaintiff continued to have pain in his left arm and left upper back and at that time was restricted to no driving forklifts, no working overtime, no lifting, pushing or pulling more than ten pounds.
6. On August 31, 2000 Dr. Potter imposed restrictions of no use of the left arm in plaintiff's workplace. On September 18, 2000 plaintiff continued to have pain, and Dr. Potter recommended a consult with a neurosurgeon. This referral was denied by defendant-carrier.
7. From August through November 2000 plaintiff continued to work but not in his regular job due to the restrictions placed by Dr. Potter.
8. On December 13, 2000 plaintiff presented to the Durham Regional Hospital emergency room complaining of soreness of his elbow for the last two or three days with discomfort and numbness going to his fourth and fifth digits of his left hand. At that time, plaintiff indicated that he had sustained no injury but drove a forklift for a living and did a fair amount of heavy lifting. Plaintiff was treated conservatively, given a sling and referred to an orthopedist.
9. On December 20, 2000 plaintiff presented to Dr. Peter Gilmer, an orthopaedic surgeon, complaining of left arm pain since mid-August. Plaintiff indicated that he normally drove a forklift at work using his left hand on the steering wheel and his right hand to control the levers. Plaintiff specifically told Dr. Gilmer that he did not remember any sort of injury. Dr. Gilmer on that date was of the opinion that plaintiff had an ulnar neuropathy and referred plaintiff for a nerve conduction study. The results of that study indicated that plaintiff had definitive changes in the ulnar nerve function and that those changes were obvious and dramatic. At the time plaintiff presented to Dr. Gilmer he was symptomatic, his hand was weak and use intensified his pain. Plaintiff was capable of doing light duty using only his right hand.
10. On February 7, 2001 plaintiff underwent a cubital tunnel release performed by Dr. Gilmer. Plaintiff's surgery went well, but he did not fully recover from the surgery and continued to have numbness, pain and weakness in his hand. Thereafter, Dr. Gilmer was concerned that plaintiff was developing reflex sympathetic dystrophy or regional pain syndrome and plaintiff underwent three sympathetic blocks.
11. Plaintiff continued to have pain and struggled to return to light duty work. At the time of the Deputy Commissioner hearing, plaintiff was receiving pain management treatment, and his nerve root studies indicated that his nerve root was still irritated and his muscles were not working as well as they should.
12. Plaintiff has not reached maximum medical improvement, and plaintiff cannot perform his job of driving a forklift.
13. Dr. Gilmer was of the opinion that repetitive use of plaintiff's arm could cause ulnar neuropathy, although it was not a leading cause, and would be considered one of the lesser causes of ulnar neuropathy.
14. Dr. Gilmer was of the opinion that plaintiff's job, as a forklift driver did not place plaintiff at any increased risk of ulnar neuropathy than members of the general public not so employed.
15. Jesse Edington testified that he and plaintiff had a discussion regarding plaintiff's arm pain and that plaintiff indicated that the pain in his left arm and hand was from driving a forklift. Plaintiff did not report any specific incident to Mr. Edington or any incident involving running over a brick or hitting plaintiff's elbow.
16. The forklift which plaintiff drove, forklift #52, is a Toyota forklift with hydraulically assisted power steering. The steering wheel in that model is not directly mechanically connected to the wheels as a result of the hydraulic system. Thus, manually moving the wheels or driving over something or hitting something with the wheels would not cause the steering wheel to move, as there is absolutely no mechanical connection. A failure of the hydraulic system which prevents the wheels from affecting the steering wheel would lock up the steering completely such that the forklift could not be driven at all.
17. When plaintiff returned to see Dr. Gilmer on January 18, 2001 and planned to proceed with surgery, plaintiff for the first time indicated to Dr. Gilmer that he had injured his left elbow in August 2000 and indicated that he had jarred his elbow against the steel frame of his forklift.
18. Plaintiff's allegations that he hit a brick with the tire of his forklift and injured his elbow were not accepted as credible by the Deputy Commissioner. The Full Commission declines to reverse the Deputy Commissioner's credibility determination and finds plaintiff's testimony concerning his injury not credible. Plaintiff indicated at the Deputy Commissioner hearing that he hit a brick with the tire of the forklift and that the steering wheel jarred his elbow. However, plaintiff did not relate consistent versions of how his injury occurred to his medical providers and defendant-employer. Plaintiff initially denied any specific incident to Dr. Gilmer and then many months later indicated that when he hit the tire of the forklift on the brick he jarred his elbow against the steel frame of the forklift. Plaintiff did not tell his immediate supervisor, Mr. Edington, Dr. Potter at Concentra, or the healthcare providers at the emergency room that there was any specific incident that caused his injury.
19. Plaintiff failed to prove by the greater weight of the evidence that on August 17, 2000 he sustained an injury by accident arising out of and in the course of his employment with defendant-employer.
20. On August 17, 2000 plaintiff did not sustain a compensable occupational disease. While it is possible that plaintiff's elbow condition might have been caused by the use of his arm, plaintiff was not at an increased risk of contracting ulnar neuropathy from the general public and other persons not so employed.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On August 17, 2000 plaintiff did not sustain an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. On August 17, 2000 plaintiff did not sustain a compensable occupational disease. While plaintiff's elbow condition might have been caused by the use of his arm, plaintiff was not at an increased risk of contracting ulnar neuropathy from the general public and other persons not so employed. N.C. Gen. Stat. § 97-53(13).
3. Under the law, plaintiff's claim must, therefore, be denied.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim must be, and the same is hereby, DENIED.
2. Each side shall bear its own costs.
This the ___ day of July 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN